IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| TINA G.,[1] | Case No. 6:23-cv-00396-SB |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| COMMISSIONER SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**BECKERMAN, U.S. Magistrate Judge.**

Tina G. ("Plaintiff") brings this appeal challenging the Commissioner of Social Security's ("Commissioner") denial of her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. The Court has jurisdiction over this appeal under 42 U.S.C. § 405(g), and the parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). For the reasons explained below, the Court reverses the Commissioner's decision and remands for the calculation and payment of benefits.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party.

PAGE 1 – OPINION AND ORDER

**STANDARD OF REVIEW**

The district court may set aside a denial of benefits only if the Commissioner's findings are "not supported by substantial evidence or based on legal error." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id.* Where the record as a whole may support either the grant or denial of Social Security benefits, the district court "may not substitute [its] judgment for the [Commissioner's]." *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

**BACKGROUND**

**I.    PLAINTIFF'S APPLICATIONS**

Plaintiff was born in April 1956, making her sixty-one years old on August 11, 2017, her alleged disability onset date. (Tr. 13, 19, 157, 518.) Plaintiff alleges disability due to degenerative disc disease in her cervical spine, osteoarthritis in her bilateral knees, right hip arthroplasty with subsequent hardware failure, left femur fracture, obesity, carpal tunnel syndrome, stroke, and bipolar disorder. (*Id*. at 174-75, 971, 1334.)

///

The Commissioner denied Plaintiff's applications initially and upon reconsideration, and on April 24, 2018, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (*Id*. at 200.) Plaintiff represented herself without an attorney and testified at an administrative hearing on March 25, 2020. (*Id.* at 28-60.) On August 5, 2020, the ALJ issued a written decision denying Plaintiff's applications. (*Id.* at 157-66.) Plaintiff requested review from the Appeals Council, and on January 15, 2021, the Appeals Council remanded the case for further consideration of Plaintiff's various neurological impairments, carpal tunnel syndrome, and residual functional capacity ("RFC") based on the entirety of the record. (*Id*. at 13, 174-75.)

On February 3, 2022, a second hearing took place before the same ALJ. (*Id*. at 3513-56.) On March 2, 2022, the ALJ found that Plaintiff was not disabled and could perform her past relevant work as a receptionist. (*Id*. at 13-19.) On January 20, 2023, the ALJ's decision became the final decision of the Commissioner when the Appeals Council denied review. (*Id.* at 1-6.) Plaintiff now seeks judicial review of that decision.

**II.   THE SEQUENTIAL PROCESS**

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the

claimant can perform other work that exists in significant numbers in the national economy. *Id. at 724-25*.

The claimant bears the burden of proof for the first four steps. *See Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. *See id*. at 954. The Commissioner bears the burden of proof at step five, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett,* 180 F.3d at 1100. If the Commissioner fails to meet this burden, the claimant is disabled. *See Bustamante,* 262 F.3d at 954.

**III.    THE ALJ'S DECISION**

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is disabled. (Tr. 13-19.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since August 11, 2017, the alleged onset date. (*Id.* at 15.) At step two, the ALJ found that Plaintiff suffered from the following severe, medically determinable impairments: "degenerative disc disease of the cervical spine, obesity, osteoarthritis of the bilateral knees, and status post right hip arthroplasty." (*Id*. at 16.)

At step three, the ALJ concluded that Plaintiff did not have an impairment that meets or medically equals a listed impairment. (*Id*.) The ALJ then concluded that Plaintiff had the RFC to perform "a range of sedentary work[.]" (*Id.* at 17.) The ALJ found that she could "occasionally reach overhead bilaterally" and "occasionally reach forward with full arm extension bilaterally, but she may reach forward at hinged elbow without limitation." (*Id*.) Finally, the ALJ determined that Plaintiff can "occasionally reach laterally with both upper extremities." (*Id*.)

///

At step four, the ALJ concluded that Plaintiff could perform her past relevant work as a receptionist. (*Id*. at 19.) The ALJ determined that Plaintiff was not disabled because "[i]n comparing [Plaintiff's] residual functional capacity with the physical and mental demands of this work, the undersigned finds that [Plaintiff] is able to perform it as generally performed, according to the Dictionary of Occupational Titles." (*Id*.)

## DISCUSSION

In this appeal, Plaintiff argues that the ALJ erred by failing to (1) provide clear and convincing reasons for discounting Plaintiff's subjective symptom testimony; (2) give legally sufficient reasons to discredit the lay witness testimony of Plaintiff's daughter; and (3) resolve conflicts with Plaintiff's past relevant work and the Dictionary of Occupational Titles ("DOT") requirements. (*See generally* Pl.'s Opening Br. ("Pl.'s Br."), ECF No. 10.)

As explained below, the Court concludes that the Commissioner's decision is based on harmful legal error and not supported by substantial evidence. The Court agrees that the ALJ committed reversible error in discounting Plaintiff's testimony without specific, clear, and convincing reasons supported by substantial evidence. The Court further concludes that Plaintiff satisfies the credit-as-true standard, and the Court does not have serious doubt about whether Plaintiff is disabled. Accordingly, the Court remands Plaintiff's case for an award of benefits.

I.   **PLAINTIFF'S SYMPTOM TESTIMONY**

   A.   **Applicable Law**

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited[.]" *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014)

PAGE 5 – OPINION AND ORDER

(quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)). Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives specific, clear and convincing reasons for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (simplified).

Under Ninth Circuit case law, clear and convincing reasons for rejecting a claimant's subjective symptom testimony "include conflicting medical evidence, effective medical treatment, medical noncompliance, inconsistencies in the claimant's testimony or between her testimony and her conduct, daily activities inconsistent with the alleged symptoms, and testimony from physicians and third parties about the nature, severity and effect of the symptoms complained of." *Bowers v. Astrue*, No. 11-cv-583-SI, 2012 WL 2401642, at *9 (D. Or. June 25, 2012) (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008), *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007), and *Light v. Comm'r Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)).

    **B.**    **Analysis**

There is no evidence of malingering here, and the ALJ determined that Plaintiff provided objective medical evidence of underlying impairments that might reasonably produce Plaintiff's alleged symptoms. (Tr. 18.) The ALJ was therefore required to specify which testimony the ALJ found not credible and provide clear and convincing reasons for discounting Plaintiff's symptom testimony. *See Ghanim*, 763 F.3d at 1163.

    **1.**    **Plaintiff's Symptom Testimony**

Plaintiff testified at the 2020 hearing that her "bone density is very bad" and because of her stroke and hip issues she has fallen "four to six times[,]" causing her to go to the hospital. (Tr. 36.) She further testified that her "back and neck get frozen" when "she is sitting more than [ten] to [fifteen] minutes in front of a computer." (*Id.*) She testified that sitting causes her pain

PAGE 6 – OPINION AND ORDER

and hurts her back and legs, but especially her neck and arms. (*Id*. at 35.) In her last job, Plaintiff was placed on "short-term disability" and missed several workdays because she had to leave work early due to the pain in her neck, back, legs, and arms. (*Id*. at 43, 57.)

At her 2022 hearing, Plaintiff testified that her back pain is chronic and "hinders [her] from doing a lot throughout the day." (*Id*. at 3535.) She is unable to "completely function normally" and in turn, she "secludes [herself] in her home." (*Id*.) Plaintiff testified that after going to the emergency department twice due to sharp and radiating pain in her right hip, her providers sent her home with medication and said "everything was fine." (*Id*. at 3536.) It was not until her third visit to the emergency department that her providers did an MRI and found her entire right hip was broken, warranting a complete replacement. (*Id*. at 3537.) Plaintiff testified that she "do[es] a lot of sitting with [her] legs propped up" and uses a cane continually because her hip is still "healing" even though it had been "almost a year" after her hip replacement surgery. (*Id*. at 3535.)

Plaintiff stated in her function report that "[t]yping on a keyboard and looking at a computer screen caus[e] severe neck[,] upper back[,] shoulder, arms[,] and hand pain" and that the most she can do on a "good day is about [fifteen] to [twenty] min[utes]." (Tr. 162-63, 466.) She also testified that although she could not sit for any longer than ten minutes in a normal seat, she could sit in a cushioned chair with neck support for about one hour. (*Id*.)

### 2. The ALJ's Findings

In the ALJ's 2020 decision, he discounted Plaintiff's testimony based on the "limited treatment record with few objective findings[.]" (*Id*. at 163.) The ALJ pointed to Plaintiff's activities of daily living to discount her testimony, finding that "[Plaintiff] was able to provide lengthy and neat handwritten responses on her function report" and could participate in daily activities involving pet care, self care, reading, and simple meal preparation. (*Id*. at 163.)

PAGE 7 – OPINION AND ORDER

Nevertheless, the ALJ noted that "[o]n examinations, crepitus [a popping sound in a joint], some reduced range of motion of the knees, and a slowed gait do support the limitation of sedentary work." (*Id.*) In the 2022 decision, the ALJ did not specifically address Plaintiff's activities of daily living but instead cross-referenced the 2020 decision. (*Id*. at 18.)

In the 2022 decision, the ALJ incorporated the 2020 opinion with respect to Plaintiff's "disabling neck and joint pain," and further noted that Plaintiff continues to experience debilitating symptoms and that she remains home in seclusion where she must prop up her legs to mitigate discomfort in her knees and hip. (*Id.*, "She noted that pain injections have provided little relief of her symptoms.")

The ALJ focused the 2022 opinion on newly submitted evidence following the Appeals Council remand. The ALJ noted a 2019 "left femur fracture" and a 2021 right hip arthroplasty "with subsequent hardware failure" but found that "[w]hile these events caused considerable discomfort and temporary mobility issues—they did not persist at a disabling level for a continuous 12-month period." (*Id.* at 18.) The ALJ also cited treatment notes from April 2021 demonstrating normal "movement, coordination, and gait." (*Id*. at 19.)

The ALJ concluded that Plaintiff's "recurrent neck and knee pain, along with lingering discomfort following her recent hip replacement, justify a restriction to sedentary tasks." (*Id.*)

      **3.**    **Activities of Daily Living**

Plaintiff argues that the ALJ erred by discounting Plaintiff's symptom testimony as inconsistent with her activities of daily living. (Pl.'s Br. at 9-10.) The Court agrees.

      **a.**    **Applicable Law**

An ALJ may discount a claimant's symptom testimony based on activities that are incompatible with the claimant's testimony regarding the severity of her symptoms. *See Burrell v. Colvin*, 775 F.3d 1133, 1137-38 (9th Cir. 2014) (explaining that "[i]nconsistencies between a

PAGE 8 – OPINION AND ORDER

claimant's testimony and the claimant's reported activities provide a valid reason for an adverse credibility determination" (citing *Light*, 119 F.3d at 792)); *Garrison*, 759 F.3d at 1016 (stating that a claimant's activities have "bearing on [the claimant's] credibility" if the reported "level of activity" is "inconsistent with [the claimant's] claimed limitations" (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998))). Notably, however, there must be a meaningful inconsistency between the claimant's daily activities and the symptom testimony. *See Harris v. Kijakazi*, No. 21-35136, 2022 WL 1262011, at *1 (9th Cir. Apr. 28, 2022) (holding that the ALJ committed harmful error in discounting the plaintiff's symptom testimony and explaining that the plaintiff's "limited daily activities were not meaningfully inconsistent with her symptom testimony" (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989))).

      **b.**    **Disposition**

The Court finds that the ALJ erred by discounting Plaintiff's symptom testimony as inconsistent with her activities of daily living. (*See* Pl.'s Br. at 9-10.)

In the 2020 decision, the ALJ found that "[Plaintiff] was able to provide lengthy and neat handwritten responses on her function report" and could participate in daily activities involving pet care, self care, reading, and simple meal preparation. (Tr. 162.) With respect to the former, the ALJ did not address the amount of time Plaintiff may have spent filling out her report, and Plaintiff points out that she took more than an hour to complete the report. (Tr. 163, 466.) She also did so within the confines of her own home, where she was able to "l[ie] down on [a] sofa or bed often to relieve neck and back pain." (*Id.*) Thus, there was no meaningful inconsistency between Plaintiff's legible handwriting and her testimony about her inability to sit for more than 15-20 minutes, need to lie down and prop her legs to mitigate discomfort, and chronic pain.

With respect to Plaintiff's ability to perform self care, take care of a pet, read, and prepare simple meals, these daily activities are not inconsistent with Plaintiff's testimony about

PAGE 9 – OPINION AND ORDER

her symptoms and limitations, nor do they easily transfer to a workplace environment. *See Garrison*, 759 F.3d at 1016 ("Many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." (quoting *Fair*, 885 F.2d at 603)). That Plaintiff is able to complete limited daily activities with unlimited breaks, position changes, and the ability to move around or lie down does not demonstrate an ability to meet typical workplace expectations.[2] *See Webb v. Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005) ("The mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from [her] credibility as to [her] overall disability. One does not need to be utterly incapacitated in order to be disabled." (quoting *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001))); *see also Nicole N.-M. v. Comm'r Soc. Sec. Admin.*, 649 F. Supp. 3d 1025, 1035-36 (D. Or. 2022) ("[T]he majority of the activities in which Plaintiff engaged—performing adequate self-care, preparing simple meals, driving a car, paying her bills, handling her finances, performing household chores, and going grocery-shopping—are limited basic daily activities that are legally insufficient to support the ALJ's conclusion." (citing *Webb*, 433 F.3d at 688)); *Kimberly T. v. Comm'r Soc. Sec. Admin.*, No. 3:19-cv-01013-HZ, 2021 WL 2554621, at *4 (D. Or. June 22, 2021) ("The ALJ did not find, however, that Plaintiff's reported activities indicated transferrable work skills. The ALJ also failed to specify how Plaintiff's reported activities contradict her symptom testimony.").

For these reasons, the Court finds that Plaintiff's activities of daily living were not a clear and convincing reason to discredit her testimony.

---

[2] Contrary to the ALJ's assertion that Plaintiff "did not elaborate on limitations" regarding her exertional or postural activities, she did so in her function report, as discussed above. The ALJ did not address how these limitations would transfer to full-time employment.

PAGE 10 – OPINION AND ORDER

#### 4.     Objective Medical Evidence

Plaintiff also argues that the ALJ erred by discounting Plaintiff's symptom testimony as inconsistent with the objective medical evidence, and that objective evidence alone is not a clear and convincing reason to discount Plaintiff's symptom testimony. (Pl.'s Br. at 9.) The Court agrees.

As an initial matter, having found that the ALJ's only other reason for discounting Plaintiff's testimony was legally insufficient, the lack of supporting medical evidence cannot be the only reason to discount Plaintiff's symptom testimony. *See Christa W. v. Kijakazi*, No. 1:22-cv-01293-SB, 2023 WL 6972455, at *12 (D. Or. Oct. 23, 2023) ("[T]he lack of supporting or inconsistent objective medical evidence cannot provide the sole basis for discounting a claimant's testimony." (citing *McClaren v. Saul*, 812 F. App'x 500, 501 (9th Cir. 2020), *Valdez v. Berryhill*, 746 F. App'x 676, 677 (9th Cir. 2018), and *Taylor v. Berryhill*, 720 F. App'x 906, 907 (9th Cir. 2018)); *Ortiz v. Berryhill*, No. 2:17-cv-06243-JDE, 2018 WL 3655411, at *4 (C.D. Cal. July 31, 2018) (reversing and remanding where "[t]he only articulated reason for finding Plaintiff only partially credible was 'the medical records do not support the alleged severity of his symptoms'"). For this reason, the Court concludes that the ALJ committed harmful error in discounting Plaintiff's testimony.

In any event, the Court further finds that the ALJ erred in discounting Plaintiff's testimony in light of few objective findings, specifically with respect to her chronic pain, which limited her ability to sit for long periods of time and caused her to miss work. The ALJ found that Plaintiff's "recurrent neck and knee pain, along with lingering discomfort following her recent hip replacement, justify a restriction to sedentary tasks." (Tr. 19.) Thus, the ALJ acknowledged that Plaintiff had recurring neck and knee pain, along with at least "discomfort"

PAGE 11 – OPINION AND ORDER

following her hip replacements, but he discounted without explanation Plaintiff's testimony that such pain prevented her from sitting for more than 15-20 minutes and from working a full day.

The ALJ relied on his 2020 opinion with respect to discounting Plaintiff's "allegations of disabling neck and joint pain" (*id.* at 18), but that opinion included only vague conclusions that "the record . . . does not evidence limitations in sitting" and "the treatment record does not support the claimant's alleged degree of difficulty with use of the upper extremities or inability to sit for extended periods." (Tr. 164.) Neither the 2020 nor 2022 opinion cited any specific medical records or opinions that contradicted Plaintiff's allegations that her chronic pain limited her ability to sit for extended periods of time or work a full day. On the contrary, the medical records reflect that Plaintiff complained of neck, back, knee, shoulder, and joint pain consistently from 2017 to 2022. (*See* Pl.'s Br. at 7-9, citing several examples.) As a result, the Court finds that the ALJ failed to cite specific, clear, and convincing reasons to discount the severity of Plaintiff's symptom testimony. *See, e.g.*, *Holcomb v. Saul*, 832 F. App'x 505, 506 (9th Cir. 2020) ("[T]he ALJ discussed relevant medical evidence but failed to link [the claimant's] symptom testimony to specific medical records and explain why those records contradicted [the claimant's] symptom testimony"); *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015) ("Here, the ALJ found generally that the claimant's testimony was not credible, but failed to identify which testimony she found not credible and why. We conclude, therefore, that the ALJ committed legal error."); *Smolen*, 80 F.3d at 1284 ("The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion.") (citation omitted); *Patricia E.G. v. Comm'r Soc. Sec. Admin.*, No. 1:19-cv-01811-CL, 2021 WL 2444159, at *4 (D. Or. June 15, 2021) (reversing and remanding where "the ALJ stated that he

considered Plaintiff's testimony regarding pain and discomfort, but failed to identify what testimony he found inconsistent with the record").

Of particular note, the ALJ acknowledged that Plaintiff testified in both 2020 and 2022 regarding her chronic pain and discomfort, but he discounted the severity of her pain and discomfort without any meaningful explanation and instead concluded that she experienced a level of pain and discomfort that the law requires her to work through. (Tr. at 18, "The claimant's inability to work without some pain and discomfort, however, does not necessarily satisfy the test for disability under the provisions of the Act.") Absent a more detailed explanation of evidence calling into question the severity of Plaintiff's pain and discomfort, the ALJ erred.[3] *See, e.g.*, *Laurie B. v. Comm'r Soc. Sec. Admin.*, No. 6:20-cv-02173-JR, 2022 WL 336843, at *4 (D. Or. Feb. 4, 2022) (reversing and remanding for benefits where the "ALJ rejected plaintiff's testimony regarding her pain and discomfort by generally stating that an 'inability to work without some pain and discomfort . . . does not necessarily satisfy the test for disability under the provisions of the Act'"); *Patricia E.G.*, 2021 WL 2444159, at *4 (finding that "the ALJ stated that Plaintiff's inability to work without some pain and discomfort does not necessarily satisfy the test for disability under the provisions the Act" and holding that the ALJ's analysis was "insufficient under the clear and convincing standard") (simplified).

For all of these reasons, the Court concludes that the ALJ erred by discounting Plaintiff's symptom testimony.[4]

---

[3] To the extent the ALJ relied on the opinions of the non-examining state agency medical consultants that Plaintiff could perform sedentary work (Tr. 164), Plaintiff correctly points out that the state agency medical consultants did not have the opportunity to review four years of medical records from March 2018 through the ALJ's most recent decision in March 2022. (*See* Pl.'s Br. at 12-13; Pl.'s Reply Br. at 5, ECF No. 15.)

[4] The Court need not reach Plaintiff's other assignments of error. (*See generally* Pl.'s Br.)

PAGE 13 – OPINION AND ORDER

**II.     REMEDY**

The Court finds that the credit-as-true standard is satisfied here and that remand for the payment of benefits is appropriate.

**A.     Applicable Law**

"Generally when a court of appeals reverses an administrative determination, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citation omitted). In a number of cases, however, the Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits when [the three-part credit-as-true standard is] met." *Garrison*, 759 F.3d at 1021 (citations omitted).

The credit-as-true standard is met if three conditions are satisfied: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Id.* at 1020 (citations omitted). Even when the credit-as-true standard is met, the court retains the "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* at 1021.

**B.     Analysis**

The Court finds that the credit-as-true standard is satisfied here and that remand for an award of benefits is appropriate.

The Court first concludes that the record has been fully developed. It includes more than six years' worth of treatment records, testimony from Plaintiff and her daughter about Plaintiff's symptoms and limitations, and medical opinions. As to further proceedings, the Commissioner

PAGE 14 – OPINION AND ORDER

argues that "further proceedings is the only appropriate remedy where the record as a whole shows 'serious doubt' that the plaintiff was 'in fact disabled.'" (Def.'s Br. at 14, ECF No. 14.) The Commissioner argues that "[t]he inconsistencies between [Plaintiff]'s complaints and the rest of the evidence all indicate she was not disabled" (*id.*), but the Commissioner does not identify any specific issues to address on remand.

Ninth Circuit guidance and the objectives of the credit-as-true rule foreclose an argument that remanding to allow the Commissioner a do-over serves a "useful purpose" under the first part of the credit-as-true analysis. *See Garrison*, 759 F.3d at 1021; *see also Leitz v. Kijakazi*, No. 22-35356, 2023 WL 4342114, at *3 (9th Cir. July 5, 2023) ("[R]emand would serve no legitimate purpose. . . . [P]ermitting the Government to introduce additional evidence on remand would provide the Government with an unfair second opportunity to present its case." (citing *Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004))); *Benecke*, 379 F.3d at 595 ("Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication."); *Moisa*, 367 F.3d at 887 ("The Commissioner, having lost this appeal, should not have another opportunity to show that [the claimant] is not credible any more than [the claimant], had he lost, should have an opportunity for remand and further proceedings to establish his credibility"). Accordingly, the Court finds that Plaintiff meets the first part of the credit-as-true analysis.

Second, as discussed above, the ALJ failed to provide legally sufficient reasons for discounting Plaintiff's symptom testimony. Accordingly, Plaintiff satisfies the second part of the credit-as-true analysis.

Third, if the improperly discredited evidence were credited as true, the ALJ would be required to find Plaintiff disabled because her impairments would cause her to exceed the

customary tolerance for absences. Plaintiff testified that after going through extensive efforts to treat her impairments, including right and left hip arthroplasties, ORIFs on both her right and left femurs to correct fractures, steroid injections in both of her knees, and the utilization of pain medication, her impairments continue to cause emergency department visits and require her to seclude at home the majority of the time to manage her pain. (Tr. 1250, 1256, 1343, 1350, 1384, 3492, 3535.) The record reflects that, in her last job, Plaintiff was placed on "short-term disability" and missed several workdays because she had to leave work early due to the pain in her neck, back, legs, and arms. (*Id*. at 43, 57.)

When asked if an individual who would routinely miss two days per month of work could maintain employment, the VE testified that such absences "would rise to a level that employers simply would not tolerate" and "[t]his individual would not be employable." (*Id*. at 3555.) In light of this testimony, the ALJ would be required to find Plaintiff disabled on remand. Importantly, the Commissioner has not "pointed to evidence in the record the ALJ overlooked and explained how that evidence casts serious doubt" on whether Plaintiff is disabled. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). The Court concludes that the record before it does not create any serious doubt as to whether Plaintiff is disabled.

Plaintiff has satisfied the three prongs of the credit-as-true doctrine, and therefore the Court remands this case for an award of benefits. *See Smith v. Saul*, 820 F. App'x 582, 586 (9th Cir. 2020) (reversing district court opinion affirming the denial of benefits and instead remanding "with instructions to remand to the ALJ for calculation and award of benefits" where "[t]he vocational expert concluded that an individual with [the claimant's] limitations, as described in the improperly discredited testimony of [the treating psychologist], the lay witnesses, and [the claimant], would be unable to perform competitive employment"); *see also*

PAGE 16 – OPINION AND ORDER

*Revels v. Berryhill*, 874 F.3d 648, 668 n.8 (9th Cir. 2017) (explaining that where each of the credit-as-true factors is met, only in "rare instances" does the record as a whole leave "serious doubt as to whether the claimant is actually disabled" (citing *Garrison*, 759 F.3d at 1021)).

## CONCLUSION

For the reasons stated, the Court REVERSES the Commissioner's decision and REMANDS for the calculation and payment of benefits.

**IT IS SO ORDERED.**

DATED this 19th day of August, 2024.

_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge